**E-filing**

**CDI**

**JS 44** (Rev. 12/07)(cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JASON GREGORY TURNER, individually and on behalf of all others similarly situated, | ALL NIPPON AIRWAYS, JAPAN AIRLINES INTERNATIONAL, and AMERICAN AIRLINES, INC., |

| **(b)** County of Residence of First Listed Plaintiff _____ (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|

| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| MILBERG WEISS LLP, JEFF S. WESTERMAN (SBN 94559) One California Plaza, 300 S. Grand Avenue, Suite 3900 Los Angeles, CA 90071-3149 (213)-617-1200 | |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Med. Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Other Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Act 15 USC Section 1

Brief description of cause:
Price Fixing

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASES". CV 07-5634; CV 07-5821; CV 07-6219; CV 07-6417; CV 08-0339; CV 08-1140

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE
March 13, 2008

SIGNATURE OF ATTORNEY OF RECORD
Jeff S. Westerman/SSK

1  MILBERG WEISS LLP
   JEFF S. WESTERMAN (SBN 94559)
2  One California Plaza
   300 S. Grand Avenue, Suite 3900
3  Los Angeles, CA 90071-3149
   Telephone: (213) 617-1200
4  Facsimile: (213) 617-1975

5  MILBERG WEISS, LLP
   PETER SAFIRSTEIN, ESQ.
6  ANDREW MORGANTI, ESQ.
   One Pennsylvania Plaza
7  New York, NY 10119-0165
   Telephone: (212) 594-5300
8  Facsimile: (212) 868-1229

9  Attorneys for the Plaintiff and the Class

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13
   JASON GREGORY TURNER, individually        Case No.
14 and on behalf of all others similarly situated,

15                  Plaintiff,                CLASS ACTION COMPLAINT

16              vs.                           COMPLAINT FOR VIOLATIONS OF
                                              THE SHERMAN ANTITRUST ACT 15
17 ALL NIPPON AIRWAYS, JAPAN AIRLINES         U.S.C. § 1
   INTERNATIONAL, and AMERICAN
18 AIRLINES, INC.,                            **JURY TRIAL DEMANDED**

19                  Defendants.

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1
DOCS\429192v1

1    Pursuant to the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all
2  others similarly situated, hereby brings this action for treble damages and injunctive relief under
3  the federal antitrust laws of the United States, Section 1 of the Sherman Antitrust Act of 1890, 15
4  U.S.C. § 1 ("Sherman Act") and Sections 4 and 16 of the Clayton Antitrust Act of 1914, 15
5  U.S.C. §§ 15, 26 ("Clayton Act") against Defendants.  Plaintiff complains and alleges upon
6  information and belief except as to those paragraphs applicable to the named Plaintiff, which are
7  based on personal knowledge, as follows:

8                              **NATURE OF THE ACTION**

9    1.    This action arises from a conspiracy among certain airlines to fix, raise, maintain,
10 and/or stabilize prices for long haul passenger flights ("Passenger Air Transportation") and for
11 fixed fuel surcharges on this transportation ("Fuel Surcharges") between United States and
12 Japan. Fuel surcharges are fees charged to passengers by airlines purportedly to compensate the
13 airlines for increased fuel costs.  As alleged herein, Defendants agreed to subscribe to the same
14 index to set fuel surcharges despite having different cost structures, including different fuel
15 hedging strategies.

16    2.    Plaintiff, on behalf of all persons and entities that purchased Passenger Air
17 Transportation, to and from the United States, from any of the Defendants and their co-
18 conspirators or any predecessor, subsidiary, or affiliate of each, at any time during the period
19 from April 15, 2003 to August 1, 2007 (the "Passenger Fare Transportation Class Period") and
20 February 1, 2005 to August 1, 2007 (the "Fuel Surcharge Class Period"), bring this action to
21 recover treble damages and injunctive relief for violations of the United States antitrust laws.

22    3.    This action arises from Defendants colluding with each other to fix, raise,
23 maintain, and/or stabilize prices for passenger fuel surcharges associated with, at least, one
24 segment between the United States and the relevant market.

25    4.    Because of this unlawful conduct and conspiracy, Plaintiff and other members of
26 the Class paid artificially inflated prices for international Passenger Air Transportation and
27
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 1 -
DOCS\429192v1

1  passenger fuel surcharges. Plaintiff and other members of the Class purchased those services
2  from Defendant and have been damaged thereby.

3      5.    Plaintiff bring this action to recover treble damages and injunctive relief for
4  violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1 pursuant to
5  Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26, and various
6  state consumer protection statutes.

7                              **JURISDICTION AND VENUE**

8      6.    This Complaint is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C.
9  §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit,
10  including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff
11  and the members of the Class by reason of Defendants' violations of Section 1 of the Sherman
12  Act, 15 U.S.C. §§ 1.

13      7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and
14  1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

15      8.    This Court has *in personam* jurisdiction over each of the Defendants because each
16  was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused
17  injury to persons and entities residing in, located in, or doing business in the Northern District of
18  California and throughout the United States.

19      9.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 22 and 28 U.S.C.
20  § 1391(b), (c), and (d) because during the Class Period many of the Defendants resided,
21  transacted business, were found, or had agents in this district, and because a substantial part of
22  the events giving rise to Plaintiff's claims occurred, and a substantial portion of the affected trade
23  and commerce described below has been carried out, in this district.

24                                      **PARTIES**

25      10.    Plaintiff Jason Gregory Turner is a resident of the State of California. Plaintiff
26  purchased Passenger Air Transportation between United States and Japan directly from a
27
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                    - 2 -
DOCS\429192v1

1   defendant during the class period and has suffered pecuniary injury as a result of the antitrust
2   violations alleged herein.

3   11.    Defendant All Nippon Airways ("ANA") is a Japanese company with its principal
4   place of business at Shidome-City Center, 1-5-2, Higashi-Shimbashi, Minato-ku, Tokyo 105-
5   7133, Japan. All Nippon Airways conducts Passenger Air Transportation throughout the world,
6   including into the U.S. and especially California.

7   12.    Defendant Japan Airlines ("JAL") is a Japanese company with its principal place
8   of business at 4-11, Higashi-Shinagawa 2-chrome, Shinagawa-Ku, Tokyo 140-8605, Japan.
9   Japan Airlines International conducts Passenger Air Transportation throughout the world,
10  including into the United States, especially California.

11  13.    Defendant American Airlines, Inc. ("AA") is the principal subsidiary of AMR
12  Corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth,
13  Texas. AA's operations consist primarily of the transportation of persons, property and mail
14  throughout the United States and abroad, including Japan.

15                                          **AGENTS**

16  14.    The acts alleged to have been done by Defendants were authorized, ordered or
17  done by their directors, officers, agents, employees, or representatives while actively engaged in
18  the management of each of the Defendants' affairs.

19                                  **TRADE AND COMMERCE**

20  15.    Throughout the Class Period, Defendant ANA, JAL, and AA engaged in the
21  continuous and uninterrupted flow of Passenger Air Transportation in international commerce
22  throughout the United States and Japan. Defendants' unlawful activities, as described herein,
23  took place within the flow of commerce to passenger flight customers throughout the world, and
24  had a direct, substantial and reasonably foreseeable effect upon interstate and international
25  commerce in the United States

26  16.    As a direct, substantial, and reasonably foreseeable effect upon U.S. interstate and
27  international commerce, Defendants ANA, JAL, and AA have reported that they have flown over

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1            - 3 -
DOCS\429192v1

1 ‖ a millions passengers on long-haul direct flights between United States and Japan during each
2 ‖ year of the Class Period.

3 ‖ **CLASS ACTION ALLEGATIONS**

4 ‖ 17.    Plaintiff brings this action on his own behalf and as a class action pursuant to

5 ‖ Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class:

6
7
8

> All persons and entities who purchased Passenger Air Transportation that
> included at least one flight segment between the United States and Japan
> directly from Defendants, or any predecessor, subsidiary, or affiliate or
> business partner of each, at any time during the period between April 15,
> 2003 and August 1, 2007.

9 ‖ 18.    Because such information is in the exclusive control of Defendants, Plaintiff does

10 ‖ not know the exact number of members of the Class. Due to the nature of the trade and

11 ‖ commerce involved, however, Plaintiff believes that Class members number at least in the

12 ‖ hundreds-of-thousands and are sufficiently numerous and geographically dispersed throughout

13 ‖ the United States and the world so that joinder of all Class members is impracticable.

14 ‖ 19.    There are questions of law or fact common to the Class, which predominate over

15 ‖ individual issues, including:

16 ‖     (a)    Whether Defendants engaged in a combination or conspiracy with their

17 ‖ coconspirators to fix, raise, maintain, and/or stabilize Passenger Air Transportation and Fuel

18 ‖ Surcharges on such flight segments;

19 ‖     (b)    The duration of the conspiracy alleged in this Complaint, and the nature

20 ‖ and character of the acts performed by Defendants in furtherance of the conspiracies;

21 ‖     (c)    Whether Defendants violated Section 1 of the Sherman Act;

22 ‖     (d)    Whether Defendants were unjustly enriched;

23 ‖     (e)    The effect of Defendants' conspiracy caused injury to the businesses or

24 ‖ property of Plaintiff and the members of the Class;

25 ‖     (f)    Whether Defendants fraudulently concealed the alleged conspiracy so as

26 ‖ to equitably toll any applicable statute of limitations;

27 ‖     (g)    Whether damages can be shown on a class-wide basis; and

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                           - 4 -
DOCS\429192v1

1    (h)    The appropriate measure of damages sustained by Plaintiff and other
2  members of the Class;

3    (i)    Plaintiff will fairly and adequately protect the interests of the Class and the
4  interests are coincident with and not antagonistic to those of other members of the Class.
5  Plaintiff is represented by counsel competent and experienced in the prosecution of complex
6  litigation, including antitrust class action litigation.

7    (j)    A class action is superior to other available methods for the fair and
8  efficient adjudication of this controversy.  The prosecution of separate actions by individual
9  members of the Class would create a risk of inconsistent or varying adjudications, establishing
10 incompatible standards of conduct for Defendants.

11    (k)    The Classes are readily definable and ascertainable through corporate
12 records.

13

14

**DEFENDANTS' DIFFERENT FUEL HEDGING STRATEGIES UNDERSCORES THEIR ANTICOMPETITIVE CONDUCT OF ADOPTING AND ADJUSTING FUEL SURCHARGES IN TANDEM**

15    20.    As alleged herein, Defendants agreed to subscribe to the same index to set fuel
16 surcharges despite having different cost structures, including different fuel hedging strategies.

17    21.    Each Defendant adopted its own fuel hedging strategies, yet, the adoption and
18 adjustment of their passenger fuel surcharges in tandem is illogical but for a cartel-like
19 agreement between them.

20    22.    During the Class Period, Defendant ANA engaged in various methods to hedge
21 fuel costs and fuel consumption management techniques.

22    23.    During the Class Period, Defendant JAL engaged in various methods to hedge
23 fuel costs and fuel consumption management techniques.

24    24.    During the Class Period, Defendant AA engaged in various methods to hedge fuel
25 costs and fuel consumption management techniques.

26

27

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                    - 5 -
DOCS\429192v1

**AIR CARRIER TRADE ASSOCIATIONS
DISCUSS INTERNATIONAL FARES AND FUEL SURCHARGES**

25.    The International Air Transportation Association ("IATA") is an organization that includes most of the world's international airlines, including Defendants.    See, http://www.iata.org/about/index.

26.    During the relevant time period, Defendants were all members of IATA.

27.    During IATA conferences, member firms discussed the increasing costs of fuel, passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of fuel.

28.    The Star Alliance is a global integrated airline network founded in 1997. Current Star Alliance members are Air Canada, Air New Zealand, All Nippon Airways, Asiana, Austrian Airlines Group, LOT Polish Airlines, Lufthansa, Scandinavian Airlines, Singapore Airways, South Africa Airways, Spanair, Swiss, TAP Portugal, Thai International Airways, United Air Lines, and US Airways.

29.    During Star Alliance meetings, member firms discussed the increasing costs of fuel, passenger fuel surcharges and maintaining yields.

30.    The OneWorld Alliance is a global integrated airline network. Current OneWorld Alliance members are AA, British Airways, Cathay Pacific, Finnair, Iberia, JAL, LAN, Qantas, and Royal Jordanian.

31.    During Star Alliance meetings, member firms discussed the increasing costs of fuel, passenger fuel surcharges and maintaining yields.

**THE DEPARTMENT OF JUSTICE'S INVESTIGATIONS**

32.    On February 14, 2006, Asian, European, and US antitrust authorities conducted raids throughout the United States and the world at the offices of the various international airline offices in Asia, Europe, and the United States.

33.    These investigations include international air cargo and long-haul international passenger flights, including flights in and out of the United States.

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1     - 6 -
DOCS\429192v1

1    34.    On June 20, 2006, AA received a grand jury subpoena from the DOJ requesting
2  information relating to certain passenger pricing practices and surcharges applicable to
3  international passenger routes.

4    35.    During May 2007, at the IATA's Cargo Network Service Conference, the United
5  States Federal Bureau of Investigations ("FBI") served subpoenas on various airlines.  FBI
6  agents also interviewed various airline managers at their hotel rooms.

7    36.    On August 1, 2007, the DOJ charged a member of the IATA of colluding with
8  rivals to fix passenger fuel surcharges for flights between United States and United Kingdom and
9  United States and South Korea.

10    37.    In its news release, the DOJ said: "The Department also charged that between
11  August 2004 and February 2006, British Airways engaged in a conspiracy to suppress and
12  eliminate competition by fixing the Fuel Surcharge charged to passengers on long-haul
13  international flights, including *flights between the United States and the United Kingdom*."
14  (emphasis added).

15    38.    The DOJ also acknowledged that *Lufthansa and Virgin Atlantic had agreed to
16  cooperate* in the "*ongoing*" investigation and have been conditionally accepted into the Antitrust
17  Division's Corporate Leniency Program.

18    39.    To date, the DOJ has successfully obtained the guilty pleas from British Airways,
19  Korean Air Lines, and Qantas Airways Limited.

20  **DEFENDANTS' CONCERTED INCREASES OF PASSENGER FUEL SURCHARGES
ON ROUTES BETWEEN THE UNITED STATES AND JAPAN MARKET**
21

22    40.    Defendants were aware that their imposition of fuel surcharges and other
23  surcharges would not be successful if their supposed competitors did not join them; otherwise,
24  customers would be free to seek out lower prices.  For this reason, Defendants entered into
25  agreements to adopt and adjust passenger fuel surcharges at the same times and following the
26  scale.

27
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1      - 7 -
DOCS\429192v1

1    41.    The International Air Transportation Association ("IATA") is an organization that
2  includes  most  of  the  world's  international  airlines,  including  Defendants.    See,
3  http://www.iata.org/about/index.

4    42.    During IATA conferences, member firms discussed the increasing costs of fuel,
5  passenger fuel surcharges, maintaining yields, and other issues relating to the conservation of
6  fuel.

7    43.    After a March 17 and 18, 2003, IATA meeting in Geneva, Switzerland, where
8  Defendants attended, ANA and JAP announced that effective April 15, 2003, they would
9  increase base fares by 3%. (*Air Fares on the move*, Daily Telegraph, March 21, 2003)("IATA
10 held talks in Geneva on Monday and Tuesday and decided to raise the regular fares of member
11 airlines by 3 per cent in principle" due to the exceptional cost increases, Tatsuo Yoshimura,
12 spokesperson said... ANA confirmed the same increase amount).

13    44.    During a press conference, JAL President Isao Kaneko said that JAL would
14 consider raising international flight fares and that details of its intentions to do so would be
15 discussed at a meeting of the May 28 IATA meeting.  Mr. Kaneko further added that JAL hoped
16 to raise its fares by a few percentage points. (*JAL Group to Mull International Fare Hike*, Jiji
17 Press, May 26, 2004).

18    45.    After a May 28, 2004 IATA meeting in Geneva, Switzerland, where Defendants
19 attended, on June 8, 2004, ANA and JAL informed their aviation regulator that effective July 1,
20 2004, they would increase base fares by 5%. (*JAL to introduce fuel levy*, PNG Post-Courier,
21 June 2, 2004 (The move came after IATA decided on the fare rise at a meeting on Friday, JAL
22 spokesman Hirohide Ishikawa said. We plan to follow the IATA decision as a member, he
23 said... ANA spokesman Fumiyoshi Fukumori, indicated that ANA would also raise international
24 fares in July), and *News Release, Announcement of fare increases based upon IATA Meeting of*
25 *May 28*, ANA North America, June 8, 2004). *See also*, *Fare Hike Ahead, Aviation Week &*
26 *Space Tech.*, June 21, 2004 (ANA and JAL sought approval of and received a 5% fare increase
27 and at the same time) and Executive Travel in Asia this Week, PR Newswire, June 9, 2004
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1          - 8 -
DOCS\429192v1

1  ("Both Japan's leading carrier Japan Airlines and rival All Nippon Airways yesterday filed an
2  application for approval to raise fares on international routes to and from Japan."), and, *JAL*
3  *Raise International Fares by 5 pct*, Jiji Press, June 8, 2004 (ANA and JAL independently filed
4  applications with Ministry on the same day)).

5  46.    At the time that ANA and JAL announced their intentions to adopt passenger fuel
6  surcharges effective June 2004, Defendant AA and other members of OneWorld Alliance re-
7  introduced passenger fuel surcharges. *(Oil prices hit airlines hard*, Travel Digest, June 1, 2004).

8  47.    After an August 30 - September 1, 2004 IATA meeting in Tokyo, Japan, where
9  Defendants attended, ANA and JAL announced that effective October 1, 2004, they would
10  increase base fares by 5%. *(JAL, All Nippon Likely to Raise Fares*, China Daily, September 29,
11  2004 ("The two carriers plan to apply to Japan's transport ministry to raise fares after the IATA
12  consented to the move in Geneva earlier this month, the airlines' spokesmen said... We're
13  considering seeking about a 5 percent fare increase."), *see also, Japan-Europe airfares to rise*
14  *5% from Jan 15 due to higher oil prices*, AFX UK Focus, September 28, 2004 ("It said both JAL
15  and ANA did not pass on the full 5 percent rate hike on international routes approved [by the
16  IATA] in July out of concern that doing so would hurt ticket sales during the summer travel
17  season.")).

18  48.    During October 2004, AA adopted a $10 passenger fuel surcharge on its flights.
19  After no competitors followed-suit, AA was forced to drop the passenger fuel surcharge the
20  following week.    In the alternative, AA followed ANA and JAL's adjustments to base fares.
21  *(Fuel Surcharges meet mixed futures*, Airline Business, November 1, 2004)

22  49.    On October 28, 2004, ANA and JAL both announced that effective February 1,
23  2005, they would adopt $24 (or 2,500 Yen) fuel surcharges per segment for long-haul flights
24  between United States and Japan. *(JAL, ANA to raise airfares on soaring crude oil prices*, Japan
25  Transportation Scan, November 1, 2004 (JAL and ANA announced on Thursday, October 28,
26  2004), *News Release, ANA to Introduce Fuel Surcharges for International Flights*, ANA North
27
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                    - 9 -
DOCS\429192v1

1  America, January 5, 2005, and, *JAL slaps 500 yen surcharge on international airfares*, Daily
2  Yomiuri, December 26, 2004).

3       50.    On December 9, 2004, it was reported that AA would also adopt a \$20-25 fuel
4  surcharge per segment on long haul flights to Japan effective January 2005. (*Fuel Surcharge may*
5  *be imposed by some airlines serving Japan*, Asia in Focus, December 9, 2004).

6       51.    On February 10, 2005, ANA and JAL both announced their intention to raise
7  long-haul fares between United States and Japan by 2%, effective April 1, 2005. It was reported
8  that ANA and JAL's decision to raise prices followed a decision made during an IATA meeting.
9  (*JAL, ANA to raise fares on international routes by 2% on April 1*, Japan Transportation Scan,
10 February 14, 2005).

11      52.    On June 7 and 10, 2005, ANA and JAL, following their attendance at an April 4,
12 2005 meeting in New York City, informed their aviation regulator of their intention that effective
13 July 1 and 7, 2005, they would adjust base fuel surcharges to \$48 (or 5,000 Yen) per segment for
14 long-haul flights between United States and Japan. (*JAL Head Says Will Not Hike Domestic*
15 *Fares*, AFX Asia Focus, June 14, 2005 (JAL and ANA last week announced plans to hike
16 international fares in July due to high fuel prices) and *ANA to raise fares on international routes*
17 *July 7*, Japan Economic Newswire, June 7, 2005, *see also, News Release, Japan Airlines*
18 *Increases International Passenger Fare Fuel Surcharges – effective July 1*, JAL, June 3, 2005,
19 and *News Release, ANA to Increase Fuel Surcharges for International Flights*, ANA North
20 America, June 7, 2005).

21      53.    On August 17, 2005, AA announced its intention to adjust passenger fuel
22 surcharges by \$10 per segment on long-haul flights between United States and Japan.

23      54.    On December 9, 2005, it was reported that ANA and JAL announced their
24 intention that effective April 1, 2006, they would adjust base fares up 8,000 Yen. (*Japan JAL to*
25 *Raise Air Fares in April 2006*, Japanese Business Digest, December 9, 2005). On December 21,
26 2005, JAP informed its aviation regulator of its intention. (*Press Release*, JAL, December 21,
27 2005).

28

1    55.    On January 16 and 23, 2006, JAL and ANA announced their intention that
2  effective March 1, 2006, they would adjust base fuel surcharges to $66 (or 8,000 Yen) per
3  segment for long-haul flights between United States and Japan. (*Press Release*, JAL, January 16,
4  2006).

5    56.    On April 12, 2006, it was reported that AA announced its intention that it would
6  adjust fuel surcharges to $65 per segment for long-haul transpacific flights excluding Japan.
7  (*Airlines raise fuel surcharges*, FT.com, April 12, 2006).

8    57.    During a June 5, 2006 IATA meeting in Paris, France, IATA GEO Giovanni
9  Bisignani, applauded the air carrier attendees for using passenger fuel surcharges to combat high
10  oil prices. (*Concerns Over Industry Performance Grow at IATA AGM*, Aviation Daily, June 6,
11  2006).

12    58.    On August 17 and 31, 2006, JAL and ANA informed their aviation regulator of
13  their intention to adjust their base fuel surcharges effective October 1 and 5, 2006. After a
14  September 2006 IATA meeting in Geneva, Switzerland, where Defendants attended, which JAL
15  discussed increasing fuel surcharges, JAP and ANA followed through with their intentions and
16  adjusted base fuel surcharges to $113 (13,600 Yen) per segment for long-haul flights between
17  the United States and Japan. (*JAL Applies for Increase in International Passenger Fare Fuel*
18  *Surcharges*, Japan Corporate News, August 17, 2006, and *News Release, ANA to Raise*
19  *International Fuel Surcharges*, ANA North America, August 31, 2006), see also, *JAL Seeks*
20  *Higher Fuel Surcharges for International Flights in October*, Asia Pulse, August 18, 2006 ("JAL
21  on Thursday sought approval from the Transport Ministry to raise its fuel surcharge on fares for
22  international flights starting Oct. 1… ANA is expected to follow…"), and, *ANA, following JAL,*
23  *to raise international fares Oct. 5, second time in 6 months*, Japan Economic Newswire Plus,
24  August 31, 2006 (ANA said Thursday it applied to the aviation regulator to raise fares on its
25  international routes Oct. 5).

26    59.    On November 16, 2006, ANA and JAL announced their intention to reduce
27  passenger fuel surcharges on long-haul flights between United States and Japan, effective
28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                          - 11 -
DOCS\429192v1

1   January 2007. (*JAL, ANA decide to lower international fares from January on falling fuel costs*,
2   Japan Transportation Scan, November 20, 2006).

3       60.     On December 26, 2006, ANA and JAL announced their intention to raise fares by
4   5% to 7% on long-haul flights between United States and Japan, effective April 1, 2007. (*JAL,*
5   *ANA plan 5-7% hike in international air fares from April*, Japan Transportation Scan, January 1,
6   2007).

7       61.     On May 15 and 25, 2007, JAL and ANA informed their aviation regulator of their
8   intention that effective July 1 and 10, 2007, they would adjust base fuel surcharges to $100 (or
9   12,000 Yen) per segment for long-haul flights between United States and Japan. (*ANA Sets New*
10  *International Fuel Surcharge*, Japan Corporate News, May 25, 2007, *News Release, JAL Revises*
11  *International Passenger Fare Fuel Surcharges*, JAL, May 15, 2007, and *News Release,*
12  *International Fuel Surcharges Set to Rise*, ANA North America, May 25, 2007).

13      62.     But for Defendants' anti-competitive conduct, Defendants would have been
14  unable to perpetrate the extent to which they increased the prices of their fares and fuel
15  surcharges.

16                          **FRAUDULENT CONCEALMENT**

17      63.     Throughout the relevant period, Defendants and their co-conspirators
18  affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and members of
19  the Class.

20      64.     Plaintiff and the members of the Class did not discover, and could not discover
21  through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as
22  alleged herein until August 1, 2007. Nor could Plaintiff and the members of the Class have
23  discovered the violations earlier than that time because Defendants and their co-conspirators
24  conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in
25  furtherance thereof, and fraudulently concealed their activities through various other means and
26  methods designed to avoid detection. The conspiracy was by its nature self-concealing.

27

28

1    65.    Only on or about August 1, 2007, when the DOJ announced its antitrust charges

2    against British Airways and Korean Air regarding their membership of cartels for the purpose of

3    fixing the price of passenger fuel surcharges, was the existence of any fuel surcharge

4    conspiracies disclosed to the public.

5    66.    Plaintiff and the members of the Class could not have discovered the unlawful

6    conduct at an earlier date through the exercise of reasonable diligence because of Defendants'

7    active and purposeful concealment of its unlawful activities.

8    67.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

9    and the members of Class assert the tolling of any applicable statute of limitations affecting the

10   rights of action of Plaintiff and the members of the Class.

11                                    **COUNT I**
12                      **VIOLATIONS OF THE SHERMAN ACT**

13   68.    Plaintiff incorporates by reference as if fully set forth herein the allegations

14   contained in the preceding paragraphs of this Complaint. During the relevant period, Defendants

15   and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in

16   restraint of trade to implement, artificially raise, fix, maintain, and/or stabilize the prices of fares

17   between April 15, 2003 and August 1, 2007 and passenger fuel surcharges between February 1,

18   2005 and August 1, 2007, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

19   69.    Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the

20   Class seek injunctive relief, and treble damages, and any such other relief that the Court may

21   deem necessary and appropriate.

22   70.    In formulating and effectuating the alleged contract, combination, or conspiracy,

23   Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and

24   effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of base fares

25   and related passenger fuel surcharges.

26

27

28

1  71.    During the Class Period, Plaintiff and members of the Class purchased base fares
2  and related passenger fuel surcharges directly from Defendants and their co-conspirators (or their
3  respective agents, predecessors, subsidiaries, affiliates, and/or business partners).

4  72.    The illegal combination and conspiracy alleged herein had the following effects,
5  among others:

6       (a)    price competition in the pricing of base fares and related passenger fuel
7  surcharges, and, consequently, the prices of which has been restrained, suppressed, and/or
8  eliminated;

9       (b)    prices charged by Defendants for base fares and related passenger fuel
10 surcharges were fixed, raised, maintained, and/or stabilized at artificially high, non-competitive
11 levels;

12      (c)    prices paid by Plaintiff and other members of the Class for base fares and
13 related passenger fuel surcharges charged by Defendants have been fixed, raised, maintained,
14 and/or stabilized at artificially high, non-competitive levels by the fixing of prices of base fares
15 and passenger fuel surcharges; and

16      (d)    Defendants refused to engage in price competition for passenger fuel
17 surcharges.

18 73.    Defendants' anticompetitive activities and their effects are in violation of the
19 Sherman Act.

20 74.    During the Class Period, Defendants sold base fares for travel between United
21 States and Japan in a continuous and uninterrupted flow of interstate and foreign commerce.
22 Defendants received payment for such services across state boundaries. Defendants' activities,
23 and the sale of their services, have both taken place within, and have had a substantial
24 anticompetitive effect upon, interstate commerce within the United States.

25 75.    Pursuant to Sections 4 and 16 of the Clayton Act, Plaintiff and members of the
26 Class seek injunctive relief, and treble damages, and any such other relief that the Court deems
27 necessary and appropriate.

28

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1                - 14 -
DOCS\429192v1

76.     Plaintiff and other members of the Class have been required to pay more for base fares and related passenger fuel surcharges than they would have paid in a competitive marketplace absent Defendants' price-fixing cartel.

77.     During the Class Period, Defendants' conspiracy as described herein caused Plaintiff and the members of the Class to pay artificially inflated prices. As a result, Plaintiff and the members of the Class have been injured and damaged in their business and property in an amount to be determined.

78.     As a direct and proximate result of Defendants' illegal conspiracy, Plaintiff and the other members of the Class have been injured and financially damaged in their respective businesses and property, in that they have paid artificially inflated prices during the Class Period that they would not have paid in the absence of the illegal conspiracy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class request as follows:

A.     The Court determine that this action may be maintained as a class action under Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

B.     The Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.     Judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class for damages as allowed by law and as determined to have been sustained by them;

D.     Each of the Defendants, successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of action, or

1 adopting any practice, plan, program or design having a similar purpose or effect in restraining
2 competition;

3     E.     The Court award Plaintiff and the Class attorneys' fees and costs, and pre-
4 judgment and post-judgment interest as permitted by law; and

5     F.     The Court award Plaintiff and the Class such other and further relief as may be
6 necessary and appropriate.

7 <center>**JURY TRIAL DEMAND**</center>

8     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all
9 of the claims asserted in this Complaint so triable.

10 DATED: March 13, 2008           MILBERG WEISS LLP
11                         JEFF S. WESTERMAN

13                         JEFF S. WESTERMAN

14           One California Plaza
15           300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071-3149
16           Telephone: (213) 617-1200
Facsimile: (213) 617-1975
17           Email: jwesterman@milbergweiss.com

18           MILBERG WEISS LLP
PETER SAFIRSTEIN
19           ANDREW MORGANTI
One Pennsylvania Plaza
20           New York, NY 10119-0165
Telephone: (212) 594-5300
21           Facsimile: (212) 868-1229
Email: psafirstein@milbergweiss.com
22                      amorganti@milbergweiss.com

23           Attorneys for the Plaintiff and the Class

COMPLAINT FOR VIOLATIONS OF THE SHERMAN ANTITRUST ACT 15 U.S.C. § 1    - 16 -
DOCS\429192v1